UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BARBARA HENDRICKSON,

    Plaintiff,

  v.                                                  Case No. 19-CV-1907

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

Barbara Hendrickson seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## PROCEDURAL BACKGROUND

On July 15, 2016, Hendrickson filed applications for a period of disability and disability insurance benefits and SSI, alleging disability beginning June 11, 2016 (Tr. 45) due to anxiety, depression, post-traumatic stress disorder ("PTSD"), and hypothyroid disorder (Tr. 289). Hendrickson's applications were denied initially and upon reconsideration. (Tr. 45.) Hendrickson filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on June 19, 2018. (Tr. 69–102.) Hendrickson testified at the hearing, as did Dennis Duffin, a vocational expert. (Tr. 69.)

In a written decision issued October 2, 2018, the ALJ found that Hendrickson had the severe impairments of lumbar degenerative disc disease, depression, and anxiety. (Tr. 48.) The ALJ found that Hendrickson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 51–53.) The ALJ further found that Hendrickson had the residual functional capacity ("RFC") to perform medium work, with the following limitations: few changes in work processes or procedures, no complex tasks, and occasional interaction with others, including both co-workers and the public. (Tr. 53.)

While the ALJ found that Hendrickson was incapable of performing her past relevant work as a quality insurance inspector, the ALJ found that given Hendrickson's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. 60–61.) As such, the ALJ found that Hendrickson was not disabled from her alleged onset date until the date of the decision. (Tr. 62.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Hendrickson's request for review. (Tr. 15–20.)

## DISCUSSION

Hendrickson makes four arguments for reversing the Commissioner's decision. Three of the arguments contest the substance of the ALJ's decision. The fourth argument is that the ALJ was not properly appointed under the Appointments Clause of the United States Constitution. *See* U.S. Const. art. II, § 2, cl. 2. The Commissioner counters that Hendrickson forfeited the Appointments Clause argument by failing to raise it before the ALJ. Because the constitutional issue is dispositive in this case, I will only address that argument.

2

### 1. *History of Administrative Exhaustion in Social Security Cases*

As a general proposition, "a litigant must raise all issues and objections at trial," including at the hearing level in administrative proceedings. *Freytag v. Comm'r*, 501 U.S. 868, 879 (1991). However, this exhaustion bar is not jurisdictional but prudential; in certain "rare cases," courts may adjudicate issues not raised below. *Id.* at 878–79 (holding that an Appointments Clause challenge to the authority of the Special Trial Judge in Tax Court was "in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below").

In 2000, the Supreme Court held that at least one such "rare case" exists in the Social Security context: Claimants need not exhaust issues before the Appeals Council to enable judicial review. *Sims v. Apfel*, 530 U.S. 103, 107–12 (2000).[1] The Supreme Court reasoned that no statute or SSA regulation requires issue exhaustion in Social Security administrative proceedings. *Id.* at 107–08. The Court then explained that even in the absence of a statute or regulation requiring exhaustion, courts sometimes impose issue exhaustion requirements as an analogy to the rule that "appellate courts will not consider arguments not raised before trial courts." *Id.* at 108–09. However, the Court explained that there is no parallel rationale for judicially-created issue exhaustion in the Social Security context, because Social Security proceedings are not adversarial but inquisitorial. *Id.* ("Although many agency systems of adjudication are based to a significant extent on the judicial model of decisionmaking, the

---

[1] Prior to *Sims*, the Seventh Circuit had been in general agreement with the Commissioner that a Social Security claimant waived an issue by failing to exhaust it at the administrative level. *See Griffith v. Callahan*, 138 F.3d 1150, 1154 (7th Cir. 1998) ("[P]laintiff . . . has failed to exhaust [the] issue at the administrative level and has therefore waived her right to raise it on appeal."); *Schmidt v. Shalala*, No. 93-1037, 1993 WL 495045, at *4 (7th Cir. Nov. 30, 1993); *Pope v. Shalala*, 998 F.2d 473, 480 n.6 (7th Cir. 1993).

SSA is perhaps the best example of an agency that is not.") The Court pointed out the ALJ's duty to investigate facts and develop arguments both for and against granting benefits, the Appeals Council's similarly broad review, and the fact the Commissioner does not oppose claims before the ALJ or the Appeals Council. Thus, "'the general rule [of issue exhaustion] makes little sense in this particular context.'" *Id.* at 112 (citing *Harwood v. Apfel*, 186 F.3d 1039, 1042–43 (8th Cir. 1999)). *See also* Jon C. Dubin, *Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings*, 97 Colum. L. Rev. 1289 (1997). "Accordingly, we hold that a judicially created issue-exhaustion requirement is inappropriate. Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Sims*, 530 U.S. at 112.

Under *Sims*, therefore, a Social Security claimant does not forfeit an issue by failing to raise it before the Appeals Council. The narrow question that remained after *Sims* (and is presented here) is whether such a claimant must have raised the issue before the ALJ. The Supreme Court has been silent on that specific question. *See id*. at 107 ("Whether a claimant must exhaust issues before the ALJ is not before us.") The Seventh Circuit has not opined one way or another since *Sims*, only confirming that "the Court specifically left open the question of whether an issue is waived if it is not raised in the administrative hearing." *Kepple v. Massanari*, 268 F.3d 513, 516–17 (7th Cir. 2001). *See also Logan v. Barnhart*, 72 F. App'x. 488, 491 (7th Cir. 2003) (reiterating *Kepple* that it was an open question whether an issue must be raised before an ALJ to preserve it for judicial appeal, stating that the claimant had "probably" forfeited the issue, but resolving the case without deciding).

4

On June 21, 2018, the Supreme Court decided *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). In *Lucia*, the Supreme Court held that Securities and Exchange Commission ("SEC") ALJs were "officers" as opposed to mere employees, because they exercised significant discretion, and thus may only be appointed by "the President, a court of law, or a head of department." *Id.* at 2051. It was undisputed in *Lucia* that all the ALJs did not meet this standard because they had been appointed by SEC staff members. In the final paragraph of its opinion, the Court briefly discussed remedies. The Court noted that a party must make a "timely challenge" to the ALJ's allegedly defective appointment, but the Court did not define precisely what this phrase meant. *Id.* at 2055. The Court did note that the claimant in *Lucia* had timely raised the Appointments Clause argument by asserting it before the SEC (i.e., at the administrative appeal level). *Id.* The Court also held that any new hearing ordered as a result of a successful Appointments Clause challenge cannot take place before the ALJ who heard the case previously, even if that ALJ was properly appointed in the interim. *Id.*

The next month, the Acting Social Security Commissioner responded to *Lucia* by issuing an emergency message stating that the appointments of all Social Security Administration ALJs across the country were approved by her. *Etta Marie M. v. Saul*, No. 18 CV 50419, 2020 WL 3448042, at *1 (N.D. Ill. June 24, 2020). As one district court in this circuit noted, "[t]his ostensibly addressed the issue for future cases. But there were many cases already in the pipeline, and claimants began adding Appointments Clause arguments to their other arguments for remand. In these cases, the Commissioner has argued that claimants forfeited the Appointments Clause argument by not raising it at the administrative level." *Id.* The court continued: "Plaintiffs meanwhile have relied heavily on *Sims v. Apfel*, 530 U.S. 103

(2000), a plurality decision holding that Social Security disability claimants are not required to exhaust all issues at the Appeals Council level." *Id.*

    2.    *Application to this Case*

The administrative hearing in this case was held before an ALJ on June 19, 2018. (Tr. 69.) On July 16, 2018, the Acting Commissioner ratified the appointment of all previously hired ALJs. *See* Social Security Emergency Message EM-18003 REV 2, *available at* https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM. The ALJ's decision is dated October 2, 2018. (Tr. 62.) Thus, even though the ALJ was properly appointed before rendering her decision, she was not properly appointed while conducting Hendrickson's hearing and taking testimony on her case. As such, Hendrickson's case is one such case in the "pipeline" prior to the Commissioner's reappointment of the ALJs. *See Morris W. v. Saul*, No. 2:19-CV-320-JVB, 2020 WL 2316598, at *3 (N.D. Ind. May 11, 2020) ("Because the ALJ who oversaw Plaintiff's hearing was not appointed pursuant to that clause (and even though the ALJ was so appointed before the ALJ's decision was issued on August 14, 2018), remand is required, and the prescribed remedy is a new hearing before a different ALJ.").

Both Hendrickson and the Commissioner raise the typical arguments for and against exhaustion that the *Etta Marie M.* court articulated. Since *Lucia* was decided, district courts across the country have been tasked with determining whether Social Security disability claimants are required to exhaust the Appointments Clause issue at the administrative level. As the Commissioner points out, the weight of the post-*Sims* authority holds that if a claimant fails to raise an issue during the administrative proceedings, it is forfeited for purposes of

6

Case 2:19-cv-01907-NJ   Filed 12/08/20   Page 6 of 14   Document 17

federal court review. (Commissioner's Br. at 21–25, Docket # 15.) The Seventh Circuit, however, has yet to weigh in on the issue.

Several appellate courts have now considered the Appointment Clause issue: the Third Circuit in *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3rd Cir. 2020), the Tenth Circuit in *Carr v. Comm'r, SSA*, 961 F.3d 1267 (10th Cir. 2020), the Eighth Circuit in *Davis v. Saul*, 963 F.3d 790 (8th Cir. 2020), the Sixth Circuit in *Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537 (6th Cir. 2020), and the Fourth Circuit in *Lisa Probst and Sharron Bradshaw v. Saul*, Nos. 19-1529 and 19-1531, 2020 WL 6811986 (4th Cir. Nov. 20, 2020). While the Third, Sixth, and Fourth Circuits determined that exhaustion was not required, the Tenth and Eighth Circuits disagreed.

In *Cirko*, the Third Circuit summarized the competing arguments, policy rationales, history, and case law. The court discussed the Supreme Court's rulings in *Lucia*, *Freytag*, and *Sims*, acknowledging that none of them provided an easy answer. *See* 948 F.3d at 154 ("neither *Lucia* nor *Freytag* map perfectly onto our case"). To determine whether to impose a judicially-created exhaustion requirement, the Third Circuit analyzed the three considerations set forth in *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)—the nature of the claim presented, the characteristics of the particular administrative procedure provided, and the balancing of the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion. *Id.* at 153–160.

First, considering the "nature of the claim presented," the *Cirko* court found that it did not favor an exhaustion requirement. The court observed that an exhaustion requirement was generally more appropriate when an agency was exercising its discretion or applying its "special expertise" but was "generally inappropriate where a claim serves to vindicate

7

structural constitutional claims like Appointments Clause challenges, which implicate both individual constitutional rights and the structural imperative of separation of powers." *Id.* at 153 (discussing the important historical purposes behind the Appointments Clause, including political accountability and protecting individual liberty). The Third Circuit also noted that "[a]n individual litigant need not show direct harm or prejudice caused by an Appointments Clause violation." *Id.* at 154. The Third Circuit relied on *Freytag*, where the Supreme Court "had declined to enforce exhaustion in the Appointments Clause context," although the Supreme Court had done so by finding that the case warranted an exception from the more general principle that litigants should raise objections at the trial level. *Id.*

As to the second consideration— the characteristics of the particular administrative procedure provided—the Third Circuit also found that it counseled against exhaustion. The court relied heavily on *Sims*, stating that while it did not dictate the answer to the question before it, "its lessons loom[ed] large." *Id.* at 155. The *Sims* Court had considered "two unusual features of the SSA review process" in declining to require claimants to exhaust claims before the Appeals Council. *Id.* "[F]irst, the Court emphasized that because no SSA regulations required exhaustion to the Appeals Council, imposing an 'additional requirement[ ]' of exhaustion would penalize claimants who did 'everything that the agency asked.'" *Id.* (quoting *Sims*, 530 U.S. at 114). "[S]econd, the Court explained that the inquisitorial nature of Appeals Council hearings rendered the case for exhaustion 'much weaker' because the [Administrative Appeal Judges ("AAJ")] did not rely upon the parties 'to develop the issues in an adversarial administrative proceeding' anyway." *Id.* (quoting *Sims*, 530 U.S. at 109–110). The Third Circuit found that the *Sims* rationale generally applies to ALJs no less than

8

to AAJs. Thus, the same no-exhaustion rule for Appeals Council hearings should also apply to ALJ hearings. *Id.* at 155–56.

Finally, as to the third consideration (balancing the individual and governmental interests), the Third Circuit again found it weighed against exhaustion. The court found that the individual interest was high because, under the SSA's inquisitorial system, the ALJ "plays a starring role" and the claimant "may choose to play a bit part" and is "not required to develop facts, let alone make legal arguments." *Id.* at 156–57. Requiring exhaustion "would upend this arrangement by forcing claimants—despite the informal, non-adversarial nature of the review process—to root out a constitutional claim even beyond the power of the agency to remedy, or alternatively risk forfeiture." *Id.* Another reason cited by the Third Circuit was that *pro se* claimants would likely not be able to raise the exhaustion argument. *Id.* Whereas, the court found that the governmental interest was "negligible at best." *Id.* at 157. The court found that "[t]raditionally, two governmental interests favor exhaustion: deference to agency expertise and opportunity for agency error correction. Neither is implicated here." *Id.* As to deference to the agency expertise, the agency has no such expertise. ALJs decide claims for benefits; they do not adjudicate constitutional matters. *Id.* at 158; *see also Fortin v. Comm'r of Soc. Sec.*, No. 18-10187, 2019 WL 421071 (E.D. Mich. Feb. 1, 2019) ("[T]he Commissioner does not show that the ALJ had any authority to address Fortin's constitutional challenge."). *C.f. Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 674 (6th Cir. 2018) ("We thus could not fault a petitioner for failing to a raise a facial constitutional challenge in front of an administrative body that could not entertain it. To hold otherwise would be to stretch forfeiture beyond its breaking point.") (citing *McCarthy*, 503 U.S. at 147–48). The court further found that the opportunity for agency correction was inapplicable because SSA judges could

9

not "cure the constitutionality of their own appointments, whether by reappointing themselves or by transferring the case to a constitutionally appointed ALJ." *Cirko*, 948 F.3d at 158.

The *Cirko* court also addressed the Commissioner's argument that not requiring exhaustion would "open the floodgates to the 'many hundreds of cases in federal district courts in which disappointed claimants have sought to raise unpreserved Appointments Clause challenges for the first time.'" *Id.* at 159 (quoting Appellant's Br. at 27). The Third Circuit found that it "deal[s] in facts, not hyperbole, and on inspection, the purported flood is actually a trickle," noting that given *Lucia* was decided more than a year ago (at the time of the *Cirko* decision), every claimant whose benefits were denied prior to *Lucia* have long since either filed an appeal in district court or become time-barred from doing so. *Id.* In *Ramsey*, the Sixth Circuit considered the opinions of the Third, Tenth, and Eighth Circuits, and found *Cirko*'s reasoning most persuasive. 973 F.3d at 540–47. The Fourth Circuit did as well. *See Probst*, 2020 WL 6811986, at *2 ("We join the Third and Sixth Circuits in concluding that imposing an exhaustion requirement here would be inappropriate.").

In contrast to *Cirko*, the *Davis* court rejected the claimants' arguments that exhaustion is not required, relying on a previous Eighth Circuit decision addressing an Appointments Clause claim in the context of members of the National Labor Relations Board. 963 F.3d at 794. The *Davis* court's principle concern, however, seemed to be the "intensely practical" issue of requiring an agency to "rehear a multitude of cases." *Id.* at 794. The *Davis* court was also concerned about the "perverse incentives that could be created by allowing claimants to litigate benefits before an ALJ without objection and then, if unsuccessful, to secure a remand

10

for a second chance based on an unexhausted argument about how the ALJ was appointed." *Id.* at 795.

Similarly, the *Carr* court found that claimants must exhaust the Appointments Clause issue before raising it in federal court. The *Carr* court rejected the argument that the SSA proceedings are non-adversarial in nature, finding that while the ALJ's review of disability claims is largely non-adversarial, the Appointments Clause challenges are "adversarial" in that "a claimant must object to an ALJ's authority." 961 F.3d at 1275. The *Carr* court rejected the *Cirko* court's decision as "unpersuasive and counter to [Tenth Circuit] precedent." *Id.* The *Carr* court also found that requiring issue exhaustion discourages the practice of "sandbagging," stating: "[W]ithout an exhaustion requirement, a claimant might proceed through the administrative process without raising an issue and then, if the SSA denies benefits, raise the issue in court and seek a new ALJ hearing." *Id.* at 1275 n.9.

Here, the Commissioner argues that because a constitutional challenge under the Appointments Clause is non-jurisdictional, a party forfeits the right to advance it on appeal by failing to raise the issue at the administrative level. (Commissioner's Br. at 19.) The Commissioner points to the weight of the post-*Sims* and *Lucia* authority finding that failure to raise an Appointments Clause issue before the ALJ forfeits the claim. (*Id.* at 20–25.) The Commissioner further argues that requiring a claimant to present an Appointments Clause challenge to the agency conforms with *Lucia*'s instruction to "timely challenge" the issue and the SSA regulations requiring claimants to raise *all* issues (constitutional or not) to the agency at the earliest possible juncture. (*Id.* at 26.) Finally, the Commissioner argues that forfeiture and waiver serve important efficiency interests, citing the possibility of thousands of previously decided claims clogging an already-stressed system. (*Id.* at 27.)

11

I do not agree that a claimant must administratively exhaust her Appointments Clause claim prior to raising it in the district court. In so finding, I am persuaded by the *Cirko* court's reasoning. Although I appreciate the majority of the district courts have found in favor of requiring exhaustion, I disagree with their rationale. There is no basis in law, regulation, or judicial precedent for requiring a Social Security claimant to exhaust a constitutional challenge of the nature presented here at the administrative level and in fact, such a requirement seems irreconcilable with *Sims*. *Sims* based its reasoning on the non-adversarial nature of SSA proceedings and specifically noted the non-adversarial role of ALJs. 530 U.S. at 110–11 ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . . The Commissioner has no representative before the ALJ to oppose the claim for benefits."). The Seventh Circuit followed this reasoning in *Formella v. U.S. Dept. of Labor*, 628 F.3d 381, 389–90 (7th Cir. 2010), requiring issue exhaustion at the administrative level because "[t]he proceedings in the Department of Labor were adversarial, and in an adversarial setting it is reasonable to expect the parties to raise and develop any issues that they want the ALJ and the ARB to address, on pain of forfeiting any issues that they do not mention." Both the Supreme Court and the Seventh Circuit appear to treat the adversarial or non-adversarial nature of proceedings as dispositive of whether issue exhaustion ought to be required, and the Supreme Court has clearly defined the role of Social Security Administration ALJs as non-adversarial. Thus, it appears inconsistent to impose administrative issue exhaustion before a Social Security Administration ALJ.

Finally, I find the Third Circuit's rationale persuasive regarding the Commissioner's "floodgate of litigation" argument. Claimants must appeal the Appeals Council's decision to the district court within sixty days and *Lucia* was decided, at this point, over two years ago.

The Commissioner reappointed all ALJs on July 16, 2018. Thus, the number of cases fitting within the applicable time parameters in which an Appointments Clause argument could be raised is "actually a trickle" rather than a flood. *See Cirko*, 948 F.3d at 159.

Because the ALJ who oversaw Hendrickson's hearing was not appointed pursuant to that clause (and even though the ALJ was so appointed before the ALJ's decision was issued on October 2, 2018), remand is required, and the prescribed remedy is a new hearing before a different ALJ. *See Lucia*, 138 S. Ct. at 2055.

## CONCLUSION

I find that the Commissioner who decided Hendrickson's case was not constitutionally appointed and Hendrickson was not required to administratively exhaust this issue before raising it in the district court. Thus, the Commissioner's decision will be reversed and remanded pursuant to 42 U.S.C. § 405(g), sentence four.

While Hendrickson asks for reversal and an award of benefits (Pl.'s Br. at 28, Docket # 12), that remedy is appropriate only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports but one conclusion—that the claimant qualifies for disability benefits. *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). That is not the case here. Thus, Hendrickson's request for an award of benefits is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

13

Dated at Milwaukee, Wisconsin this 8th day of December, 2020.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge